**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, individually and as natural mother and next friend for ML, EL, AND RL, all minors, | ) ) ) | |
| | ) | Case No. 21-cv-3262 |
| Plaintiffs, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| LAKE COUNTY, ILLINOIS, MARK R. LINDELL, STEVEN D. GERAGE, GERAGE FAMILY LAW, P.C., KELLY A. COLLINS, COLLINS FAMILY LAW, LLC, MARC R. FISHER, KATZ GOLDSTEIN & WARREN, P.C., PHYLLIS E. AMABILE, M.D., PHYLLIS E. AMABILE, M.D. & ASSOCIATES, P.C., STEVEN J. SLATER, SJS MEDICAL LABS, LLC, AND MARION K. LINDELL, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jane Doe and her then-husband, Mark Lindell, had an acrimonious divorce and custody battle in Illinois state court. After trial, a state judge sided with Lindell, awarding child custody and limiting Doe's visitation rights. Doe then filed this federal suit on behalf of herself and the couples' three children ("Plaintiffs") against Lindell, his stepmother, his attorneys, the court-appointed Guardian Ad Litem and psychological evaluator, the facility that processed her court-ordered drug test, and Lake County. In their Complaint, Plaintiffs allege a vast conspiracy between Defendants to falsify evidence and corrupt the family law proceedings in violation of their rights under the Fourteenth Amendment, the Americans with Disabilities Act, and several state laws.

Now before this Court are Defendants' motions to dismiss [16], [18], [22], [40],[46], [48], [51] the Complaint [1]. Because the Court agrees with Defendants that it should abstain from hearing this case, the Court grants the motions under Rule 12(b)(1) and dismisses the Complaint [1] in its entirety. A final judgment will issue consistent with Federal Rule of Civil Procedure 58 against Plaintiffs and in favor of all Defendants. Civil case terminated.

## I.    Background

### A.    Factual Background[1]

This case concerns the divorce and child custodial proceedings of Jane Doe and Mark Lindell. The couple, who were married in 2010, have three children. [1 (Compl.) at ¶ 19]. On July 24, 2018, Lindell filed a Petition for Dissolution of Marriage in Lake County, Illinois. [*Id.* at ¶ 20].

According to the Complaint, around the time that Lindell initiated dissolution and custodial proceedings, he accused Doe of drug abuse. Specifically, Doe alleges that in July 2018, Lindell told Doe's employer, among others, that "he believed that [Doe] was on drugs and * * * needed treatment," and "because of [Lindell's] conversation with the [Chief Medical Officer], [Jane Doe] was forced to consult with the head of the hospital's Employee Assistance Program." [1 (Compl.) at ¶¶ 28–29]. In October 2018, Doe's employer demanded that she take temporary leave and complete a neuropsychological evaluation. [*Id.* at ¶ 29]. Doe "was thought to be experiencing depression" and "anxiety with a history of ADHD," and the evaluation, conducted in November 2018, "concluded that [Doe] may be suffering from an eating disorder" and recommended a daily program for group therapy, which Doe completed in March 2019. [*Id.* at ¶ 30]. During the three months of group theory, Doe alleges that she underwent random drug tests "once or twice every

---

[1] The Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

week." [*Id.* at ¶ 34]. The Complaint further states Doe "was never positive for drugs or alcohol." [*Id.*].

The custodial and marital court proceedings also pressed forward. In December 2018, the court appointed Marc R. Fisher to serve as a Guardian Ad Litem to report on the well-being of Doe and Lindell's three children. [1 (Compl.) at ¶ 31]. In April 2019, Phyllis E. Amabile, M.D., was appointed to the case as an evaluator to make recommendations to the court about the couples' parenting capabilities. [*Id.* at ¶ 36]. Further, Doe was also ordered to submit to a hair test. [*Id.* at ¶ 39]. Doe provided a hair sample to SJS Medical Labs, LLC, doing business as ARCPoint Labs of Libertyville. [*Id.* at ¶ 40]. The result of the hair sample test, released on June 17, 2019, "alleged that [Doe]'s test was positive for EtG and measured at 41[,] which was proof that [Doe] was a severe alcoholic who consumed substantial amounts of alcoholic beverages." [*Id.* at ¶ 42]. The test also "reported that [Doe] was negative for amphetamines" despite that "[Doe] was taking two amphetamines" as prescribed by her treating psychiatrist. [*Id.*].

Central to the case, Plaintiffs allege that Lindell conspired with the Guardian Ad Litem to gain favorable custody and visitation terms, including by bribing Fisher and Amabile so they would favor Lindell and falsify Doe's drug test results. According to the Complaint, Lindell and the Guardian Ad Litem "spoke to one another numerous times," during which "it is believed that [Lindell] constantly spoke badly about [Doe]," and "that over the next five months, [Lindell] and Marc R. Fisher conspired with one another to develop a plan to take * * * the three minor children away from [Doe]." [1 (Compl.) at ¶ 31]. It is further alleged that

> Plaintiff believes that [Lindell] and Marc R. Fisher reached a conspiracy because after Marc R. Fisher was appointed as GAL, [Lindell] started to receive several $30,000.00 checks from Defendant, Marion K. Lindell, and these $30,000.00 checks that totaled $120,000.00 or more were mailed by Marion K. Lindell to [Lindell], but, received at an address where [Lindell]'s friend, Steven Wang resided.

[*Id.* at ¶ 32].  According to the Complaint, "[i]t is believed" the transferred money was "used to pay off" the various Defendants "to fulfill an unlawful conspiracy where Defendant, Steven J. Slater, would falsify [Doe]'s up and coming hair test; Defendant, Marc R. Fisher, would recommend that [Doe]'s parenting time be supervised," and "Amabile would falsely allege in her evaluation that Mark should have sole decision making authority."  [*Id.* at ¶ 33].  Moreover, for example,

> In April of 2019, it is believed that Marc R. Fisher got Defendant, Phyllis E. Amabile, M.D., involved in the case * * * to make recommendations to the court about the parenting capabilities of [Jane Doe] and Mark through which as part of the conspiracy and in exchange for the payment of funds, Phyllis E Amabile, M.D. would use the false hair test results to conclude that [Jane Doe] was a severe danger to the well being of the parties' three minor children and recommend that Mark have sole decision making for the children and [Jane Doe] have limited, supervised visitation.

[*Id.* at ¶ 36].

Dr. Amabile issued her evaluation in September 2019.  According to the Complaint, the evaluation "was based substantially on the" hair test and Amabile's "intentional[] misinterpret[ion]" of "all of [Doe]'s ADHD symptoms."  [1 (Compl.) at ¶ 46].  Plaintiffs also allege that a subsequent update to Amabile's evaluation, "intentionally ignored [Doe]'s claims regarding her disability from ADHD" and "all of [Doe]'s substance abuse tests" and opinions provided by her treating medical doctor.  [*Id.* at ¶ 48].

In February 2021, the state court judge denied Doe's request to continue the trial date.  [1 (Compl.) at ¶ 49].  The Complaint states that as a result,

> [Doe] was unable to retain the appropriate experts to prove her allegations that all of the Defendants formed and participated in the conspiracy explained above as [Doe] has been suffering from adverse symptoms of ADHD, had been unemployed for a meaningful amount of time, possessed no funds to pay for any litigation expenses to properly prepare for trial.

[*Id.*].

4

In May 2021, the state court issued a Judgment for Dissolution of Marriage and an Allocation of Parental Responsibilities and Parenting Time. [1 (Compl.) at ¶ 50]. The ruling declared that Doe was an immediate danger to her three minor children, continued Doe's limited parenting time, and ordered that Doe's parenting time with her minor children be supervised. [*Id.*].

### B. Procedural Posture

On June 17 2021, Doe filed this suit [1] in federal court, on behalf of herself and as natural mother and next friend for ML, EL, and RL, all minors ("Plaintiffs"). Plaintiffs named as defendants Mark R. Lindell and his stepmother, Marion K. Lindell; Lindell's attorneys, co-counsels Steven D. Gerage and Kelly A. Collins; the Guardian Ad Litem, Marc R. Fisher; the court-appointed evaluator, Phyllis E. Amabile, M.D.; and the lab and individuals involved in processing the hair sample, Steven J. Slater and SJS Medical Labs, LLC. Plaintiffs also named Katz Goldstein & Warren, P.C.; Phyllis E. Amabile, M.D. & Associates, P.C.; Gerage Family Law, P.C.; and Collins Family Law, LLC, which are employers for the Guardian Ad Litem, evaluator, and Lindell's attorneys, respectively.

In her seven-count federal complaint, Plaintiffs allege that, collectively, Defendants are liable for conspiring to deprive Doe of her Fourteenth Amendment rights under 42 U.S.C. §§ 1983, § 1985(3) (Counts I & II) and violating the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.* (Count III). They also advance state-law claims for abuse of process (Count IV), intentional infliction of emotional distress (Count V), fraud (Count VI), and seek *respondeat superior* liability (Count VII).

Following the initiation of this federal complaint, Plaintiffs pursued further relief in state court. On June 28, 2021, Doe filed a "Motion to Reconsider and Grant New Trial," moving for reconsideration of the ruling on the judgment for dissolution of marriage and allocation of parental

responsibilities. See [49-4 (Collins Defs. MTD Br., Ex. D))]. On July 22, 2021, Doe filed a "Petition for Adjudication of Indirect Criminal Contempt of Court" against all Defendants except for Lake County, requesting the state court judge hold defendants in "criminal contempt of [court] for their unlawful conspiracy and fraud perpetrated on [the] court." See [49-5 (*Id.*, Ex. E) at 10]. According to the pleadings, the motion for reconsideration was scheduled for hearing on October 5, 2021. See [46 (Lake County MTD) at 2]. The parties have not apprised the Court of any further developments in the state court case, including whether either the motion for reconsideration or petition for criminal contempt have been resolved.

Shifting back to the instant case in federal court, all Defendants moved to dismiss the Complaint [1] under Federal Rules of Civil Procedure 12(b)(1) and (or) 12(b)(6):

- Mark Lindell and his stepmother, Marion Lindell (collectively "Lindell Defendants"). See [16 (Mark R. Lindell & Marion K. Lindell's Mot. to Dismiss Jane Doe's Compl. ("Lindell Defs.' MTD"))].

- Marc R. Fisher and his employer, Katz Goldstein & Warren, P.C. (collectively "Katz Defendants"). See [18 (Defs. Marc R. Fisher & Katz Goldstein & Warren, P.C.'s Mot. to Dismiss Pls.' Compl. ("Katz Defs.' MTD"))].

- Phyllis E. Amabile, M.D., and Phyllis E. Amabile, M.D. & Associates, P.C. (collectively "Amabile Defendants"). See [22 (Defs' Mot. to Dismiss ("Amabile Defs.' MTD"))].

- Steven J. Slater and SJS Medical Labs, LLC. See [40 (Defs. SJS Medical Labs, LLC & Steven J. Slater's Mot. to Dismiss Counts I, II, IV, V, VI, and VII of Pls.' Compl. ("SJS Defs.' MTD"))].

- Lake County. See [46 (Lake County's Mot. to Dismiss ("Lake County MTD")].

- Kelly A. Collins and Collins Family Law, LLC (collectively "Collins Defendants"). See [48 (Defs., Kelly A. Collins & Collins Family Law, LLC's Combined Mot. to Dismiss ("Collins Defs.' MTD"); 49 (Defs., Kelly A. Collins & Collins Family Law, LLC's Mem. of Law in Support of Combined Mot. to Dismiss ("Collins Defs.' MTD Br."))].

- Defendants Steven D. Gerage and Gerage Family Law, P.C. (collectively "Gerage Defendants"). See [51 (Defs. Steven D. Gerage & Gerage Family Law, P.C.'s Rule 12(b)(1) and 12(b)(6) Mot. to Dismiss Pl.'s Compl. ("Gerage Defs.' MTD")].

Those motions are now before this Court.

## II. Legal Standard

When ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir.) (citation omitted).

In evaluating a Rule 12(b)(1) motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Shorebank Dev. Corp.*, 182 F.3d at 554 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). The Court "can also take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint." *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021). On a Rule 12(b)(1) motion, as with a Rule 12(b)(6) motion, the court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 846 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

7

### III.     Analysis

As noted above, Defendants collectively advance a number of grounds upon which to dismiss the Complaint [1] in its entirety.  As a threshold matter, many of the Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims.  Even if the case were properly in federal court, the Defendants alternatively contend that the Complaint fails to state a claim under Rule 12(b)(6).

As explained below, the Court agrees with Defendants that this Court may not interfere with ongoing state court proceedings under the principles of *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny.  The Court will first explain why abstention is appropriate under the principles of federalism and comity that underpin the Supreme Court's abstention jurisprudence before explaining why it will dismiss, not stay, this action.

### A.     Subject Matter Jurisdiction

In their motions under Rule 12(b)(1), Defendants provide three alternative but closely related reasons why this Court does not have jurisdiction over Plaintiffs' claims.[2]  Amabile, Katz, Lake County, Collins, and the Gerage Defendants first assert that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims under the *Rooker-Feldman* doctrine.  Second, they argue that this Court should abstain from hearing the case under the *Younger* doctrine.  Third, they contend that abstention is also appropriate because the allegations fall within the domestic relations exception to federal subject matter jurisdiction.

---

[2] Some Defendants present the arguments, while others adopt the co-Defendants arguments.  See [22 (Amabile Defs.' MTD) at 5–10]; [18 (Katz Defs.' MTD) at 13]; [46 (Lake County MTD) at 3]; [49 (Collins Defs.' MTD Br.) at 15–18]; [51 (Gerage Defs.' MTD) at 4–5].

1.      *Rooker-Feldman*

First up is Defendants' contention that the *Rooker-Feldman* doctrine precludes this Court from hearing Plaintiffs' Complaint. Plaintiffs disagree, insisting that a narrow exception to the doctrine takes this Complaint outside *Rooker-Feldman*'s scope. Although the Court agrees with Plaintiffs that *Rooker-Feldman* does not apply, the Court does so for different reasons than those arguments submitted by either party.

The *Rooker-Feldman* "doctrine precludes federal courts, save the Supreme Court under 28 U.S.C. § 1257, from adjudicating 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced.'" *J.B. v. Woodward*, 997 F.3d 714, 722 (7th Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Stated differently, the "doctrine divests district courts of jurisdiction only in cases where 'the losing party in state court filed suit in federal court *after* the state proceedings ended.'" *Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014) (quoting *Exxon Mobil Corp.*, 544 U.S. at 291). In *Parker*, therefore, the Seventh Circuit joined its sister circuits to conclude that *Rooker-Feldman* does not apply to a case in which the plaintiff "sued in federal court while his appeal from the state circuit court's judgment was pending in Illinois Appellate Court." 757 F.3d at 723. As the court of appeals explained, "if the state-court appeal is pending at the time the federal action is filed, the necessary final resolution in the state system is not present." *Id.* See, *e.g.*, *J.B.*, 997 F.3d at 723 (concluding *Rooker-Feldman* was inapplicable "[b]ecause [plaintiff] filed his federal lawsuit while the domestic relations court's proceedings over parenting time remained ongoing, [plaintiff] is not a state-court loser").

In this case, the *Rooker-Feldman* doctrine does not apply because the state court proceedings are pending. To be sure, Judge Lombardo issued a ruling in the dissolution and

custody proceedings on May 28, 2021. See [49-3 (Collins Defs. MTD, Ex. C ("Judgment of Dissolution of Marriage"))]. However, Doe moved under 735 ILCS 5/2-1203 for reconsideration of Judge Lombardo's decision on June 28, 2021. See [49 (Collins Defs. MTD) at 13]; [49-4 (Collins Defs.' MTD Br., Ex. D ("Mot. to Reconsider & Grant New Trial"))]. According to the parties, the motion for reconsideration was scheduled for oral argument on October 5, 2021. [46 (Lake County MTD) at 2]; See also [58 (Pls.' Resp. to Gerage Defs.) at 5)] (acknowledging that "[i]n the case at bar, Jane Doe's Motion to Reconsider is pending"). As far as this Court can gather, the motion for reconsideration has not been resolved. Under Illinois law, the motion for reconsideration tolls the thirty days authorized for appeal, and thus the state court case has not reached final judgment at this time. See Ill R. S. Ct. 303(2) (allowing thirty days from the entry of order disposing of the last pending post-judgment motion for appeal). As in *J.B.*, Doe "is not a state court loser," 997 F.3d at 723—at least not yet—and *Rooker-Feldman* therefore does not apply here absent "the necessary final resolution in the state system," see *Parker*, 757 F.3d at 705.

### 2. Abstention

Nevertheless, for the very reason that *Rooker-Feldman* does not apply, abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and other related abstention doctrines is appropriate.

#### a. *Younger* Abstention

"Because federal courts have a 'virtually unflagging obligation * * * to exercise the jurisdiction given them * * * abstention rarely should be invoked." *Barichello v. McDonald*, 98 F.3d 948, 954 (7th Cir. 1996) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)). However, one such instance is the *Younger* doctrine, which "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B.*, 997 F.3d at 722 (citing *Younger*, 401 U.S. at 43–44). "That policy was first

articulated with reference to state criminal proceedings, but as [the Supreme Court] recognized in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), the basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

The Supreme Court has therefore applied the rule to civil proceedings akin to criminal ones, while being careful not to make "general pronouncements upon the applicability of *Younger* to all civil litigation." See *Juidice v. Vail*, 430 U.S. 327, 334 (1977). As the Court reaffirmed in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), "only exceptional circumstances,' * * * justify a federal court's refusal to decide a case in deference." Those three circumstances are:

> First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions. Second, certain "civil enforcement proceedings" warranted abstention. Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders * * * uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Id.* (internal citations omitted) (quoting *New Orleans Publ. Serv., Inc., v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). "Outside these three 'exceptional' situations, *Younger* abstention is not appropriate even when there is a risk of litigating the same dispute in parallel and redundant state and federal proceedings." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) (the "problems posed by parallel state and federal proceedings," are governed by the principles of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), doctrine, which "ordinarily calls for a stay rather than dismissal when it applies.").

Relevant here, the Supreme Court has extended *Younger* to judicial contempt proceedings. In *Juidice v. Vail*, 430 U.S. 327, 334 (1977), a judgment debtor held in contempt of state court sought to enjoin the statute authorizing the contempt proceeding in federal court. See *id.* at 329.

The Supreme Court required the federal district court to abstain, applying the *Younger* doctrine because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it" which "is surely an important interest." *Id.*; see *Moore*, 442 U.S. at 423 (reaffirming that "[t]he existence of * * * such other vital concerns as enforcement of contempt proceedings * * * determine[] the applicability of *Younger-Huffman* principles" for certain civil cases). See, *e.g.*, *Barichello*, 98 F.3d at 954–55.

In ascertaining whether abstention is appropriate, the Court considers three "paramount concerns:" "(1) the judicial * * * state proceedings must be on-going; (2) the proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges." See *Barichello*, 98 F.3d at 955. "These factors remain relevant, but the critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution." *Mulholland*, 746 F.3d at 816.

In this case, *Younger* applies because, within weeks of the initiation of this federal lawsuit, Doe filed a petition for indirect criminal contempt in state court, the "Petition for Adjudication of Indirect Criminal Contempt of Court," against all individual Defendants to the federal case except Marion K. Lindell. See [49-5 (Collins Defs.' MTD Br., Ex. E)]. The petition requests that Judge Lombardo hold defendants in "criminal contempt * * * for their unlawful conspiracy and fraud perpetrated on [the] court." See [*id.* at 1]. In sum, there is an ongoing, judicial contempt proceeding. See *Juidice*, 430 U.S. at 344.

The paramount concerns are likewise satisfied. The first concern is fulfilled, as the parties "are the subjects of ongoing state proceedings." See *Barichello*, 98 F.3d at 956. Plaintiffs concede that this petition is pending. And in the time since the parties' briefing on the motions to dismiss,

12

no party has notified this Court that the petition has been resolved, nor would that matter. See *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (affirming judicial proceeding "ongoing" if federal complaint filed after initial decision but before seeking appellate review, because "unless a federal plaintiff beats the state to court—and gets past the preliminary stages * * *—the time when the federal suit is filed is largely irrelevant").

As for the second concern, a federal court ruling here risks wading into a "contempt process" in the state court, which Doe herself filed. Involvement by a federal court would jeopardize the state's ability to "indicate[] the regular operation of its judicial system" and could "readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles." See *Juidice*, 430 U.S. at 336 (internal citation omitted) (first quoting *Younger*, 401 U.S. at 44; and then quoting *Huffman*, 420 U.S. at 604).

Finally, the third concern, an adequate opportunity to raise the constitutional arguments, is likewise satisfied. Plaintiffs' argument that they have no right to raise constitutional claims is belied by Doe's actions following the initiation of this federal complaint. Doe can presumably gather and present facts in a hearing on her motion concerning the conspiracy. She can seek state appellate review for the contempt proceedings as well. Therefore, this case satisfies *Younger*'s third and final requirement because "[s]ubsequent judicial review is a sufficient opportunity." See *Majors*, 149 F.3d at 713–14 (7th Cir. 1998) (affirming *Younger* abstention because state "law provid[ed] for review of constitutional claims by way of a petition to the state court, an opportunity [the plaintiff] ha[d] taken advantage of.").

*b. Additional Principles of Abstention*

Even setting aside the criminal petition, abstention would be the appropriate course in any event. Both the Supreme Court and the Seventh Circuit have recognized the role of abstention in

state custody and welfare proceedings.  Although the precise contours of that doctrine are not clear, the Supreme Court has expanded *Younger* to reach state-initiated enforcement proceedings.  See *Moore*, 442 U.S. at 423; *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018) ("[I]f a state-initiated proceeding concerning one of the [plaintiff's] remaining children comes before [a state's] child-welfare agency and judiciary, a federal court should abstain and let the [plaintiffs] present their constitutional arguments to the state officials").

The Supreme Court has not gone so far as to extend *Younger* to domestic relations between private parties.  Nevertheless, the Seventh Circuit has recognized that in some domestic relations proceedings between private parties, even where other abstention doctrines do not map neatly on to the case, "[t]o insist on literal perfection * * * risks a serious federalism infringement."  See *J.B.*, 997 F.3d at 723.  In *J.B.*, the Seventh Circuit considered whether abstention was proper over a due process claim that implicated an ongoing child custody battle in state court.  *Id.*  The plaintiff did not "at least on its face, request the direct entry of a child custody order" but rather "a judgment against defendants whose actions allegedly paved the way for the state court's orders."  *Id.*  Still, abstention was appropriate because "interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree * * * all but compel[led] the federal judiciary to stand down."  *Id.*  The linchpin of the appellate court's holding was not "*Younger* abstention alone, but rather * * * the foundational principles of our federal system."  See *id.* at 725.  Particularly important was that the plaintiff sought out "an offensive tool to take to state court to challenge that judge's orders."  *Id.*  Furthermore, dismissal, not a stay, was appropriate because the oversight of the state court would continue until the plaintiff's children reached 18, and the court was "unwilling to require th[e] case to sit on the district court's docket for more than a decade."  *Id.* at 726.

That exact scenario is present here. Thus, even if *Younger* might not be a perfect fit, under *J.B.* abstention remains the appropriate course. Given the overlapping abstention doctrines, including the preference for federal courts to stand down in interfering with family law proceedings, this Court should not proceed, for "the adjudication of [Plaintiffs' claims] threaten[s] interference with and disruption of local family law." See *J.B.*, 997 F.3d at 723. In fact, Plaintiffs have forum shopped Doe's conspiracy allegations from state to federal court and back, lodging the same (or similar) allegations of wrongdoing in an effort to upend Judge Lombardo's rulings. In the federal complaint, just as in the petition for reconsideration[3] and criminal contempt petition,[4] Doe alleges a vast conspiracy between Lindell, his step-mother, the court-appointed employees, the medical testing lab, and Lindell's attorneys to defraud or corrupt the state judicial proceedings. In each of the three filings, she seeks the same goal: to unravel the state judge's custodial and visitation rulings. Plaintiffs plainly seek a ruling from this Court on the federal complaint as "an offensive tool to take to state court to challenge that judge's orders." See *J.B.*, 997 F.3d at 723. But with Plaintiffs' pending motion for reconsideration and criminal contempt petition, the proper course is for the "federal court[] * * * to stay on the sidelines." *Id.*

### c. Extraordinary Circumstances

Plaintiffs offer several unpersuasive arguments against abstention. Granted, "the abstention doctrine does not prevent federal courts from enjoining enforcement actions that involve 'bad faith, harassment, or a patently invalid state statute.'" *Mulholland*, 746 F.3d at 818

---

[3] See, *e.g.*, [49-4 (Collins Defs. MTD Br., Ex. D (Mot. to Reconsider & Grant New Trial)) at 1, ¶¶ 5–6, 15–17, 23] (alleging Lindell "was able to successfully fulfill his goal and to unlawfully remove [Jane Doe] from the lives of the parties' three minor children through a carefully planned conspiracy with Steven D. Gerage, Marc R. Fisher (the GAL), Phyllis E. Amabile, M.D., Steven J. Slater and Marion K. Lindell"; the judge "was not a fair nor an unbiased trier of fact"; that the "checks that [Lindell] received from Marion * * * were used to pay off Defendant[s] * * * to fulfill an unlawful conspiracy where * * * Slater, would falsify [Jane Doe's] up and coming hair test").

[4] See, *e.g.*, [49-5 (Petition for Adjudication of Indirect Criminal Contempt of Court) at ¶¶ 3–6, 9].

(quoting *Sprint*, 571 U.S. at 591). But Plaintiffs' claims are far too speculative to suggest the state court proceedings unfolded in "bad faith." The best they can muster in support of their "belief" that the state court judge is biased is the following:

> the associate judge was not fair nor an unbiased trier of fact as it is belief [*sic*] that the judge and on information and belief it is believed that all of the individual Defendants had ex parte communications with the associate judge and reached ex parte agreements to act together in a conspiracy.

See [1 (Compl.) at ¶ 24]. They add, in a brief in opposition to Amabile Defendants' motion to dismiss, that "the trial judge continues to refuse[] to recuse himself and has refused to allow a substitution of judge," which "alone prove[] that Plaintiffs shall never, ever have a fair fact finder in the State case and there is no adequate opportunity to raise the constitutional claims here where the trial judge cannot say unequivocally that he will be a fair and impartial trier of the facts." [60 (Pls.' Resp. to Amabile Defs.) at 6]. But the allegations that the parties were engaging in ex parte communications or that the judge is biased are unadorned speculation. Plaintiffs have not provided this Court with even a shred of fact to support these extraordinary claims that the state court judge engaged in impropriety. The allegations do not even approach *Younger*'s narrow exception. See *Crenshaw v. Supreme Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999) (affirming denial of *Younger* abstention in part because plaintiff failed to allege "specific facts to support her inferences of bad faith, bias, and retaliation" beyond "mere allegations and conclusion" to claim state court judges were biased against her).

In sum, the Court concludes that it should abstain from hearing Plaintiffs' case and agrees that, consistent with circuit precedent, dismissal—not a stay—is appropriate. First, Plaintiffs' case implicates a child custody battle. Judge Lombardo retains oversight over his custody and visitation rulings, and he may revisit the rulings until Jane Doe's three children, who are parties to this federal

16

case, reach eighteen. Accordingly, it is not proper for the federal suit to languish on this court's docket for years on end. See *J.B.*, 997 F.3d at 726.

## IV. Conclusion

The marital dispute between Doe and Lindell precisely the types of issues that the Supreme Court and Seventh Circuit have admonished lower federal courts to abstain from hearing. Although the Court recognizes the stress that all parties have endured in this case, out of respect for the state court system's expertise over domestic relations matters and in the absence of plausible allegations of a corrupt state justice system, this Court must refrain from entering the fray. Accordingly, the Court grants all Defendants' motions to dismiss [16], [18], [22], [40],[46], [48], [51] the Complaint [1] in its entirety. A final judgment will issue consistent with Federal Rule of Civil Procedure 58 against Plaintiffs and in favor of all Defendants. Civil case terminated.

Dated: March 23, 2022

Robert M. Dow, Jr.
United States District Judge