**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2022
Decided January 17, 2023

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

JOHN Z. LEE, *Circuit Judge*

| | |
|---|---|
| No. 22-1666 | |
| JANE DOE, et al.,[1] | Appeal from the United States District |
| *Plaintiffs-Appellants*, | Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 21-cv-3262 |
| MARK R. LINDELL, et al., | |
| *Defendants-Appellees*. | Robert M. Dow, Jr. *Judge*. |

**O R D E R**

Jane Doe sued her ex-husband, along with numerous others involved in her state-court divorce and custody proceedings, for conspiring to deprive her and her minor children of their rights to familial relations and to a fair and unbiased fact finder. The district court dismissed the case as barred by the abstention doctrine recognized in

---

[1] Doe also brings this suit on behalf of her three minor children.

No. 22-1666 Page 2

*Younger v. Harris*, 401 U.S. 37 (1971), as well as the federalism principles outlined in *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021). We affirm.

**I**

In July 2018, Mark Lindell filed for divorce from Jane Doe. Doe and Lindell have three minor children, and their acrimonious divorce proceeding involved an extensive custody dispute.

Doe alleges that during the custody proceedings, Lindell and the children's court-appointed guardian ad litem "developed a plan" to portray her as an alcoholic and a threat to her children. This complicated plan, says Doe, comprised several steps: (1) the guardian ad litem "got" the psychiatrist appointed; (2) together, they convinced the court to order Doe to submit a hair sample for drug-and-alcohol testing; (3) Lindell paid off an employee at the lab to procure false hair-test results that suggested severe alcohol use; (4) the guardian ad litem "threatened" Doe into signing on to an emergency order that limited her parenting time; (5) the psychiatrist recommended, based on the false hair-test results, that Lindell be given sole decision-making authority over the children and that Doe's parenting time be limited and supervised. When the guardian ad litem and the psychiatrist testified at trial, they again relied on the allegedly false hair-test results to support their recommendations about limits on Doe's parenting time. According to Doe, Lindell bribed the defendants to participate in the conspiracy using money from his stepmother.

Doe asserts that as part of their plan, the defendants switched her hair sample with the hair of someone known to abuse alcohol. She says that she does not consume alcohol and that when she conducted her own tests (hair, blood, and urine), the results were negative for alcohol and positive only for her prescription medication. She further asserts that, around the start of the divorce proceedings, she participated in a three-month long, group therapy program, and her random drug-and-alcohol tests consistently came back negative. The court-ordered, drug-and-alcohol test was also suspect, she says, because it did not detect any traces of her prescription medication. She attributes her symptoms—daytime drowsiness and speech difficulties—to attention deficit hyperactivity disorder, which was triggered by the divorce proceedings, and she asserts that the defendants intentionally mistook her ADHD symptoms as "evidence" of substance abuse.

No. 22-1666 Page 3

Doe alleges that the state-court judge's decisions before, during, and after the trial indicate that the judge took part in the conspiracy. For instance, when Doe moved to continue the trial, asserting that her ADHD left her underemployed and unable to afford experts to challenge the hair-test results and prove the conspiracy, the court denied her request. Doe says that at trial, the judge "ignored" her evidence (e.g., her self-conducted drug tests) that the results of the hair test were false. On May 28, 2021, the court issued a judgment approving the divorce, concluding that Doe was an immediate danger to her three children, and ordering limited, supervised parenting time.

Doe's state-court case appears to be ongoing. On June 28, 2021, she filed a motion to reconsider and for a new trial. Nearly a month later, on July 22, she petitioned for indirect criminal contempt against several defendants based on the same conspiracy allegations she makes here. Her motion and contempt petition were denied, but litigation relating to the contempt petition was ongoing when Doe filed this appeal. At oral argument before us, Doe's counsel indicated that the state-court case remained ongoing.

Meanwhile, on June 17, 2021, Doe filed this suit in federal court, alleging under 42 U.S.C. §§ 1983 and 1985 that the defendants conspired with the state-court judge to limit her parental rights. Her conspiracy claim focused mainly on the court-ordered hair test: the defendants, she said, conspired with the state-court judge to have her provide a hair sample, and then conspired with the lab to generate false results, which the defendants could then use as "proof" that she was an alcoholic. Doe also sought relief under the Americans with Disabilities Act, alleging essentially that Lake County failed to accommodate her disability by not continuing the trial, and discriminated against her by removing her children "because of her disability."[2] She also brought state-law claims of abuse of process, intentional infliction of emotional distress, and fraud.

The district court granted the defendants' motions to dismiss. In a well-reasoned Memorandum Opinion and Order, the court ruled that it was required to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), because Doe had petitioned in state court for a contempt order against the defendants based on their "unlawful conspiracy," and civil

---

[2] Doe has not preserved her ADA claim. Lake County was the only ADA defendant named in Doe's complaint, but Doe specified in her notice of appeal that Lake County "shall remain dismissed."

No. 22-1666 Page 4

proceedings involving the contempt process fall within *Younger*'s reach. Even if *Younger* did not apply, abstention was appropriate under *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021), the court concluded, because adjudication of her claims would require federal courts to interfere with family-law proceedings that traditionally are reserved for state and local government. The court also ruled that Doe's conspiracy claims did not demonstrate any extraordinary circumstances—such as bad faith—that would allow it to avoid abstaining under any exception to *Younger* abstention. The court likewise declined to apply the *Rooker-Feldman* doctrine because the state-court proceedings were still pending, and that doctrine divests district courts of jurisdiction only in cases where the losing state-court party filed suit after the state proceedings ended. *See Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014).

## II

On appeal, Doe challenges the district court's application of *Younger* abstention. *Younger* requires federal courts to abstain when the federal suit would interfere with three types of ongoing state proceedings: criminal prosecutions; civil enforcement proceedings; and "civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc., v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up) (alteration in original). The third category includes civil cases involving the contempt process. *See Juidice v. Vail*, 430 U.S. 327, 335 (1977). If one of these three types of proceedings is involved, then the court must consider three additional factors: whether the state proceeding is ongoing, involves important state interests, and provides an adequate opportunity to raise constitutional challenges. *See Sprint*, 571 U.S. at 81. When a case satisfies all the factors, federal courts should abstain unless there are extraordinary circumstances, such as "bad faith, harassment, or a patently invalid state statute." *Id.* at 77.

Doe makes a two-part argument against applying *Younger* in this case. First, although she concedes that her case is an ongoing judicial proceeding that touches on important state interests, she argues that she did not have an adequate opportunity to raise her constitutional claims in the state court. Second, she argues that her conspiracy allegations fall within the "extraordinary circumstances" exception to *Younger*.

We conclude that this case falls within *Younger*'s purview, although we add our own gloss to the district court's ruling. The district court abstained under *Younger* because Doe's contempt petition, which postdated the filing of her federal case, meant

No. 22-1666 Page 5

that her state case was one of the three types of proceedings in which *Younger* applies. *See Juidice*, 430 U.S. at 335. That is correct, but also significant is the timing when Doe filed her contempt petition. She did not file her contempt petition—the aspect of the state-court litigation bringing the case within *Younger*'s reach—until *after* she filed her federal suit, and *Younger* applies only to federal suits that would interfere with a "pending" or "ongoing" state-court proceeding. *See Sprint*, 571 U.S. at 78. For purposes of *Younger*, a state-court proceeding is deemed pending if it was initiated "before any proceedings of substance on the merits have taken place in the federal court." *See Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (cleaned up). Here, abstention under *Younger* was appropriate because at the time Doe filed her contempt petition, the federal case had not "progressed beyond the embryonic stage"—the district court had granted extensions of time but had not decided any "contested matter." *Ewell v. Toney*, 853 F.3d 911, 916–17 (7th Cir. 2017). Indeed, at the time she initiated her contempt petition, the complaint was the only document of substance that had been filed in the district court.

As for Doe's *Younger*-specific arguments, neither has merit. First, she had an adequate opportunity to raise her claims in the state court. She can (and did) appeal to the state appellate court. And Doe raised these conspiracy allegations in her contempt petition and in her motion to reconsider. Thus, the state court was "open" to hear her claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987).

Second, Doe has not adequately alleged the type of "extraordinary circumstance" that warrants an exception to *Younger* abstention. Doe bases her "extraordinary circumstances" argument primarily on *Loubser v. Thacker*, in which this court ruled that federal courts may choose not to abstain under *Rooker-Feldman* abstention when the defendants "succeeded in corrupting the state judicial process." 440 F.3d 439, 441 (7th Cir. 2006) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). But *Loubser* is inapposite. First, that case did not address *Younger* abstention. Second, Doe did not adequately "allege specific facts to support her inferences" that the state-court judge was part of the alleged conspiracy. *See Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999). Doe's conclusory assertion that the defendants "had ex parte communications with the associate judge" is insufficient to "tie the defendants to a conspiracy." *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). And her reference to judicial rulings, which almost never support an allegation of bias, *see Liteky v. United States*, 510 U.S. 540, 555 (1994), are also insufficient. Indeed, parts of Doe's brief suggest that the judge was *not* involved in the alleged conspiracy.

No. 22-1666 Page 6

    The district court also based its ruling on this court's opinion in *J.B. v. Woodard*, in which we held that the principles underlying the abstention doctrines—comity, equity, and federalism—command federal courts to abstain from cases that might interfere with state domestic-court proceedings, even when none of the abstention doctrines fits to the letter. 997 F.3d at 722–24. Doe's brief, however, neither addresses the district court's alternative ruling nor suggests how the state courts are "unwilling to address" her federal claims. *See id.* at 725 (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018)). As in *J.B.*, a federal ruling here would inappropriately insert the federal courts into an ongoing state family-court proceeding—an area of law traditionally reserved for the states. *Id.* at 722–23. Also like *J.B.*, this case is one where a stay is not practical. Because of the young ages of Doe's children, we are unwilling to require this case to linger for years on the federal docket. *See id.* at 725. We therefore agree with the district court that dismissal rather than a stay is appropriate.

    We have considered Doe's other arguments; none merit discussion.

AFFIRMED.